UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 09 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-674-GWU

CHARLEY BOGGS, JR., PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

Boggs

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

2

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

3

Boggs

such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

In the Sixth Circuit, the Step Three severity regulation has been held to be a <u>de minimus</u> hurdle in the disability determination process. <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." <u>Id.</u>, n.1.

## DISCUSSION

The administrative law judge (ALJ) found that Boggs suffered from left eye blindness and a dysthymic disorder. (Tr. 18). The plaintiff's associated non-exertional restrictions were sufficient to preclude past work, but based on the testimony of a vocational expert (VE) it was determined that the plaintiff could

4

perform significant numbers of jobs in the economy. (Tr. 22). Thus, benefits were denied. (Id.).

The plaintiff argues that the ALJ improperly did not fully consider all his physical restrictions. He had filed for benefits indicating that he had musculoskeletal and vision problems (Tr. 52, 79) but, as noted by the defendant, no treating or examining physician mentioned any specific physical function limitations associated with these conditions.[1] Both the plaintiff's primary treating physician and the consultative examiner did diagnose various physical conditions such as gout (e.g., Tr. 115, 119, 194) but the mere diagnosis of a condition is not enough. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Moreover, certain of the physicians' recorded information was not consistent, certainly, with extensive limitations–such as a June, 2003 indication that the plaintiff, whose back and extremities appeared unremarkable and whose hypertension was controlled, was walking several miles a day (Tr. 116-117), and 2003 records showing that his right

---

[1] At one point in a recent progress note, A. Cornett wrote that the patient "still doesn't feel like he can work" (Tr. 114); although she gave him a temporary work excuse for one month, this was based on his mental problems (Tr. 115) and several visits after Boggs had told her he had taken leave from work due to depression (Tr. 118), rather than any physical complaint.

5

eye vision was 20/20 and that his left eye deficit stemmed from a childhood injury (Tr. 129-133), prior to years of working.[2]

The only questionable issue regarding the assessment of the plaintiff's physical condition relates to his hearing loss. Although some right ear hearing loss was recorded by audiometer in 2002 (Tr. 132), his right ear hearing appeared to have deteriorated to the point he could not hear normal sound at two feet distance in late 2003 (Tr. 193). Reviewing this and other information, a medical advisor opined that the plaintiff had less then "severe" physical impairments, stating in part that the "claimant should be able to avoid the <u>ordinary</u> hazard ( . . . hearing) in the workplace." (Tr. 198) (emphasis added). This implies that the plaintiff should avoid a workplace with above-average hazards for a hearing-impaired person. Given the liberal standards of <u>Farris</u>, the ALJ erred in failing to consider this a "severe" physical impairment and including at least some associated restriction in the hypothetical question.

The only psychological limitation cited in the hypothetical question for which jobs were identified was a limitation to a low stress environment. (Tr. 254). The plaintiff's treating physician diagnosed major depression on several occasions (e.g., Tr. 117) and recorded symptoms including insomnia and nervousness "around

---

[2]See <u>Auer v. Secretary of Health and Human Services</u>, 830 F.2d 594 (6th Cir. 1987).

Boggs

people" (Tr. 118); the patient declined to see a therapist (Tr. 122). The consultative examiner described him as moderately anxious, mildly defensive with a somewhat diminished affect (Tr. 188) and cited a GAF consistent with moderate symptoms; he noted a "moderately limited" ability to respond to usual work pressures and "mildly limited" ability to interact with others, respond to routine changes in a work setting. (Tr. 189). Aside from the fact that <u>no</u> restrictions relating to interaction or routine changes were cited in the hypothetical question–and <u>Farris</u> indicated that more than <u>minimal</u> restrictions could be considered "severe"–the plaintiff's attorney properly raised issues about the consideration of work stress during his cross-examination of the VE, who had identified some jobs with factory quotas to be satisfied. (Tr. 255). The VE stated that "the first 30 to 90 days, they have a lot of stress in maintaining, in getting up to this [quota]." (Tr. 255). However, if the <u>stressful</u> training period is an inherent part of the job, it would seem obvious that the plaintiff should be restricted from such work. Instead, the ALJ did not permit the VE to answer a similar question.

The case will be remanded for further consideration.

This the ___9___ day of August, 2006.

_____
G. WIX UNTHANK,
SENIOR JUDGE